UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID WAYNE DARROW, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CASE NO. 12-CV-110-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration,[1] | ) |
| | ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, David Wayne Darrow, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff David Wayne Darrow's application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Richard J. Kallsnick was held May 13, 2010. By decision dated June 9, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on January 11, 2012. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

## **Background**

Plaintiff was 51 years old on the alleged date of onset of disability and 52 years old on the date of the denial decision. He has a high school education and attended college for approximately 2 years. Plaintiff claims to have been unable to work since October 1, 2008,[3] due to chronic obstructive pulmonary disorder (COPD) and emphysema. [R. 19, 117-18, 134].

---

[3] Plaintiff's application for disability insurance was filed on March 7, 2009, and alleged he had been disabled since July 1, 2008. [R. 117-18]. At the hearing of May 13, 2010, the date of disability was amended to October 1, 2008. [R. 42].

## The ALJ's Decision

The ALJ determined that the Plaintiff has severe impairments relating to chronic pulmonary insufficiency and gastroesophageal reflux disease. [R. 21]. The ALJ found that the Plaintiff has the residual functional capacity (RFC) to perform a wide range of light exertional work[4] as defined in 20 CFR 404.1567(b) except he is limited to occasional lifting and/or carrying up to 20 pounds, frequent lifting and/or carrying up to 10 pounds, he can stand and/or walk with normal breaks for 6 hours in an 8 hour workday, and sit with normal breaks for 6 hours in an 8 hour workday.  Plaintiff is able to perform work that involves operation of hand/foot controls and has no postural, manipulative, or visual limitations. Environmental limitations include clean air work environment where the temperature is controlled and the air is reasonably clean.  The ALJ found Plaintiff is afflicted with symptomatology from a variety of sources including mild to moderate to occasional chronic pain that would be of sufficient severity to be noticeable to Plaintiff, but he would be able to remain at attention and responsible in a normal work setting.  Plaintiff takes medications for relief of some of his symptomatology, but use of the medications would not preclude him from remaining reasonably alert to perform required functions presented in a work setting. [R. 21-22].

Although Plaintiff was unable to perform his past relevant work, based on the

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  Social Security Ruling (SSR) 83-10; see CFR § 404.1567(b).

testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 28]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled. See *Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ: 1) failed to propound a proper hypothetical question to the vocational expert; 2) failed to properly weigh the source evidence; and 3) failed to perform a proper credibility determination.

## **Analysis**

### Hypothetical Question

Plaintiff argues that remand is required because the ALJ failed to include mental impairments in the hypothetical question posed to the vocational expert and he should not have relied upon the vocational expert's response. [Dkt. 20, p. 2]. In posing a hypothetical question, the ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ. See *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995) (citing *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (stating that the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

The record reflects Plaintiff was treated for depression at CREOKS from August 2009 to October 2009, and was prescribed medication. On October 13, 2009, Plaintiff's physician noted he had good eye contact, was smiling, sleeping well and was relaxed.

4

Plaintiff advised that he was "doing great." [R. 241-49]. The record does not contain any mental health records after October 2009. Plaintiff's prescriptions for 2010 do not show medications for depression. [R. 190]. The ALJ recognized that under the Regulations, any impairment "must have lasted or be expected to last for a continuous period of at least 12 months." C.F.R. § 404.1509. The requirement was not satisfied in this case. The ALJ's hypothetical questions included limitations that he found were supported by the record and the testimony of the vocational expert provided substantial evidence of a significant number of jobs in the national economy that Plaintiff could perform. Thus, the court finds the hypothetical questions posed to the vocational expert by the ALJ were not error.

Plaintiff also asserts that the ALJ erred by not performing the "special technique" to address the severity of Plaintiff's mental limitations. [Dkt. 20, p. 2-3]. The Defendant argues that any error was harmless. Further, the record contains little evidence to support Plaintiff's claim that mental impairments were severe. [Dkt. 23, p. 2]. The court agrees.

This error was committed at step two when the ALJ did not evaluate Plaintiff's depression using the special technique of 20 C.F.R. § 404.1520a. Under the Regulation, when a claimant has a medically determinable mental impairment, it must be evaluated by rating the degree of functional limitation in four broad functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The factfinder, after rating the functional limitation in each area, determines the severity of the mental impairment. *Id.* § 404.1520a(d).

The ALJ must document the application of the special technique in his written decision. *Id.* § 404.1520a(e). The ALJ did not cite to the regulation or document its special

5

technique in his written decision. However, no where in the record do Plaintiff's treating physicians observe any mental or memory functional limitations attributable to depression. On the contrary, in September 2009, Plaintiff's physician noted Plaintiff had a brighter mood/affect, good eye contact and Plaintiff reported, "I feel good, medications help." In October 2009, Plaintiff's physician noted he was smiling and "doing great." [R. 245, 248]. Moreover, as there is nothing in the record to suggest that Plaintiff's depression caused functional limitations in any of the four functional areas, no reasonable factfinder could have reached any finding other than Plaintiff's depression only had minimal effects on his ability to perform basic work activities. Thus, although the ALJ's failure to apply the special technique was error, it was harmless. Plaintiff has failed to identify any mental limitations as a basis for disability and the record does not contain any evidence of functional limitations based upon mental impairments. This "harmless error" analysis is appropriately applied where the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fisher-Ross,* 431 F.3d at 733-34.

Weight of Source Evidence

Plaintiff asserts that the ALJ erred when he failed to weigh the opinions of the State agency medical consultants and failed to explain why he disagrees with his "highly qualified" experts. [Dkt. 20, p. 3]. Dr. J. Marks-Snelling, D.O., prepared the Physical Residual Functional Capacity Assessment on June 18, 2009, which was affirmed on September 3, 2009, by Dr. Luther Woodcock, M.D. The medical consultants found that Plaintiff could perform medium work with no environmental limitations. [R. 232-40]. The ALJ's Residual Functional Capacity (RFC) found Plaintiff could perform a reduced range

of light exertional work with considerable environmental limitations. [R. 21-22]. The court does not find the ALJ erred in failing to explain why he disagreed with the State agency consultants who found Plaintiff's limitations less restrictive than the decisional RFC. Further, Plaintiff does not address how an explanation by the ALJ would possibly prove beneficial, nor "[h]ow his failure to provide such an explanation is even error." *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 n.2 (10th Cir. 2012)(citing *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012).

Plaintiff argues that the ALJ erred in failing to weigh the global assessment of function (GAF). [Dkt. 20, p. 3]. The Commissioner argues that the GAF scale is intended for clinicians who are making treatment decisions rather than ALJs who are making disability determinations. Further, the Commissioner has declined to endorse the use of GAF scores observing that they do not directly correlate with the severity requirements in the mental disorder listings. [Dkt. 23, p. 4]. While GAF scores are not determinative of mental disability, they are relevant evidence that should be considered along with all other medical evidence. On August 12, 2009, Plaintiff presented to CREOKS for treatment of depression. The initial assessment reflects Plaintiff received a GAF score of 50,[5] [R. 241], though the court is unable to discern who prepared the initial assessment. [R. 241-44]. There are no other GAF scores contained in the record. Though the ALJ did not mention the GAF score in particular, he need not discuss every piece of evidence. See *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir.2004). The ALJ did note Plaintiff stated the

---

[5] A GAF score of 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

medications help, he reported being calmer, and there were no side effects. Plaintiff's physician found his mood and affect brighter, he had good eye contact, and Plaintiff advised, "I feel good now." [R. 24-25]. The court does not find that the ALJ erred because it is clear he considered the GAF score along with the rest of the medical evidence.

Plaintiff asserts that the single GAF score of 50 suggests an inability to keep a job. However, the records do not indicate that Plaintiff could not work or keep a job. On the contrary, the record indicates that Plaintiff advised he was "doing great," and "feeling good now." [R. 241-249]. Thus, the court finds no merit in Plaintiff's argument.

Plaintiff also asserts that the ALJ ignored the vocational expert's testimony that a GAF score of 50 would "prohibit sustaining work." [Dkt. 20, p. 4]. The vocational expert did not actually say a GAF score of 50 would prohibit work. The vocational expert testified, "generally speaking, that would be on a borderline that would indicate that they would work for short periods, but they might have trouble sustaining a regular work schedule." [R. 63]. The court finds that the vocational expert's testimony was equivocal. Further, as discussed elsewhere, the one-time GAF score in the records does not indicate that it was the result of any work-related impairment

### Credibility Determination

At the forefront of Plaintiff's argument concerning the ALJ's credibility determination is the ALJ's use of stock boilerplate language. The Tenth Circuit has made it clear that in the absence of a more thorough analysis, the use of boilerplate language is not sufficient to support an ALJ's credibility determination. As Plaintiff's counsel is well aware, the Tenth Circuit has made it equally clear that when the ALJ provides specific reasons for his credibility determination and links the credibility determination to the evidence, the

8

presence of boilerplate language will not require remand.  *Cf. Boehm v. Astrue,* 2013 WL 541067 at *2 (10th Cir. 2013(rejecting the same argument advanced in this case in another appeal argued by Plaintiff's counsel), *Polson v. Astrue,* 2013 WL 238849 at *2 (10th Cir. 2013 (same), *Strickland v. Astrue,* 2013 WL 3935755 at *7 (10th Cir. 2012)(same). Moreover, the Tenth Circuit "precedent 'does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)) (ellipsis and brackets omitted).

Credibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence.  An ALJ's credibility determination must be "closely and affirmatively linked" to substantial record evidence.  *Hardman v. Barnhart,* 362 F.3d 676, 678-79 (10th Cir. 2004).  The ALJ did just that.  The ALJ noted Plaintiff has been linked to the prescription assistance program, thus issues of noncompliance concerning medication are not favorable.  The ALJ also noted Plaintiff's COPD was stable on July 10, 2008, and when examined by Dr. Grubb Plaintiff indicated he becomes short of breath when walking short distances, but then advised he goes shopping and leaves his home routinely.  Despite the ALJ's use of boilerplate language, he clearly linked his adverse credibility determination to substantial record evidence.

Plaintiff argues that the ALJ "ignores his own CE did not say Claimant could work full time." [Dkt. 24, p. 3.].  Though the consultative examiner did not specifically state Plaintiff could work full time, what he did say was Plaintiff was a "well-nourished male in no

obvious distress who gets on and off the exam table without apparent need for assistance," "Clear to auscultation without audible wheezing or rhonchi and what appears to be grossly normal diaphragmatic excursion to percussion," "he did not cough or otherwise seem short-of-breath during the course." [R. 223-25].

The court is satisfied that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 1st day of July, 2013.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE